UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

|  |  |  |
|---|---|---|
| RICHARD BROSKY, and | ) |  |
| CHARMARIE BROSKY | ) |  |
|  | ) |  |
| Plaintiffs, | ) | Civil No: 11-308-GFVT |
|  | ) |  |
| V. | ) |  |
|  | ) | **MEMORANDUM OPINION** |
| KELLY FARRIS, Detective, Kentucky | ) | **&** |
| State Police, in his Official and | ) | **ORDER** |
| Individual Capacities, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

*** *** *** ***

This matter is before the Court on a Motion to Dismiss filed by Defendant Kelly Farris, Detective for the Kentucky State Police, in both his official and individual capacities. [R. 15.]  For the reasons stated below, Farris' Motion will be GRANTED in part and DENIED in part.

## I.

Plaintiffs' filed their Complaint on November 15, 2011. [R. 1.]  The Complaint contains claims based on federal law, including 42 U.S.C. § 1983 and Kentucky state law.  An Amended Complaint was filed on November 22, 2011.  The only amendment was that Farris, in his individual capacity, was named as a defendant. [R. 7.]  This was done because Plaintiffs' Complaint was only directed at Farris in his official capacity.  Both complaints were served on Farris at the same time. [R. 17 at 1.]

Richard and Charmarie Brosky were arrested at their residence on November 16, 2011. [R. 1 at 3.]  Farris, Robert O'Neil, and Brian Senters (co-defendants) confronted the Broskys on suspicion that they were manufacturing methamphetamine. [*Id.*]  The impetus for Defendants visit was a tip from Hollie Adkins that the Broskys were involved in a conspiracy to manufacture meth. [*Id.*]  After the Broskys denied having any knowledge of a manufacturing operation, Sheriff John Pickard arrived at the residence and stated that there was a methamphetamine laboratory above the residence in an open field. [*Id.* at 3-4.]  The lab and residence were on the same property, which was owned by the grandmother of either Mr. or Ms. Brosky. [*Id.* at 5.]

Defendants accompanied Mr. Brosky to the meth lab, but Mr. Brosky continued to deny any knowledge of it or who might be responsible for its presence on the property. [*Id.*]  Mr. and Mrs. Brosky were repeatedly asked if the lab was connected with Rusty Collins, an individual also being investigated for crimes related to methamphetamine. Both Plaintiffs claimed they had no information on Collins' with regard to meth.  [*Id.*] Allegedly due to the Broskys' unwillingness to tie Collins to the meth lab, the Broskys were arrested and taken to Knox County Jail. [*Id.*]  Plaintiffs claim that at the time they were taken to jail  they were not implicated with Collins' methamphetamine operation by "nearly twenty witnesses or individuals" who were familiar with that operation.  Only Hollie Adkins claimed the Broskys and Collins were affiliated. [*Id.* at 6.]  Adkins, meanwhile, is identified as a witness who gave conflicting statements to Defendants about the Broskys' involvement with Collins, identifying the Broskys in the first interview and not identifying them in the second.[1] [*Id.* at 6-7.]

---

[1] The dates of Adkins's interviews are unclear from the Complaint. [R. 1 at 6-7.]

The impact of Adkins' statements extends beyond the initial arrest as Defendants allegedly misused that information.  First, Defendant O'Neil reportedly falsified a report on the investigation of the Broskys by failing to describe Adkins's conflicting statements. [*Id.* at 7.]  Next, Defendants are all accused of referring this matter to the United States Attorney's office, and doing so while withholding information about Adkins's statements from the prosecutor. [*Id*.]  Finally, the Broskys claim that Defendants concealed the fact that "certain items recovered from the open field above the residence of the Plaintiffs did not identify any controlled substances." [*Id*. at 8.]

## II.

In a motion to dismiss pursuant to Rule 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief."  *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)).  While reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff."  *Id*. (citation omitted).  Such a motion "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Id.* (quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)).  The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).  Moreover, the facts that are pled must rise to the level of plausibility, not just possibility: "facts that are merely consistent with a defendant's liability stops short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

### III.

Defendant Farris contends that all claims in both his official and individual capacities should be dismissed.  As to the claims against him in his official capacity, the Eleventh Amendment and sovereign immunity are cited as protecting him.  With regard to the claims against him in his individual capacity, they are either "time-barred, fail to state a claim, or are barred on grounds of qualified immunity." [R. 15 at 1.]

### A.

Any claims brought against Farris in his official capacity are functionally equivalent to claims against the Kentucky State Police (KSP): "individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). This is because a plaintiff seeking to "recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id.*  Thus, KSP is the true defendant.

While "§ 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits." *Will v. Mich. Dept. of State Police,* 491 U.S. 58, 66 (1989).  Because KSP is a subdivision of the state, it is also protected by the Eleventh Amendment and Broskys' federal claims against Farris in his official capacity are dismissed. *Walker v. Kentucky*,

4

2009 WL 1374260, at *8 (E.D. Ky. May 15, 2009) (citing *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30 (1994)); *McCrystal v. Moore*, 2009 WL 192770, at *1-2 (E.D. Ky. Jan. 23, 2009); *see also Belk v. Hubbard,* 2009 WL 3839477, at *4 (E.D. Tenn. Nov. 16, 2009) (quoting *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267-68 (1981) (dismissing punitive damages claims against a state brought under federal law).

The state law official capacity claims against KSP meet the same demise. Whatever immunity is enjoyed by Kentucky administrative agencies protects that agency's employees in their official capacities. *Crawford v. Lexington-Fayette Urban County Government*, 2007 WL 101862, at *3 (E.D. Ky. January 10, 2007) (quoting *Benning v. Board of Regents*, 928 F.2d 775 (7th Cir. 1991) (explaining that state rules of immunity apply to claims premised on state law)).  Precedent is clear that KSP is an agency charged with enforcing criminal laws and is a part of Kentucky's Executive Branch. *Carter v. Porter*, 617 F. Supp. 2d 514, 518 (E.D. Ky. 2008).  It is, therefore, an agency that performs a governmental function and is protected by sovereign immunity. *Id*.

## B.

Farris seeks dismissal of the Broskys' false arrest and unlawful imprisonment claims brought under § 1983 and state law, respectively, on statute of limitations grounds. Farris' argument is that the Broskys' Complaint, filed on November 15, 2011, clearly sought recovery against Farris only in his official capacity.  The Broskys' Amended Complaint was filed on November 22, 2011, and it evinced intent to pursue claims against Farris in his individual capacity.  The statute of limitations problem arises because the limitations period for both causes of action is one year, and the Broskys'

were arrested on November 16, 2010 and arraigned on November 18, 2010.  If Farris is right, this action only consists of official capacity claims.  Although the Court concurs with Farris' calculations, an exception to the general prohibition on asserting claims after the limitations period has passed is implicated and allows for the Broskys' individual capacity claims to enjoy relation back.

The statute of limitations for false arrest and unlawful imprisonment is one year. Kentucky law provides that personal-injury torts have a one-year statute of limitations, and § 1983 claims are subject to that same limitation, as outlined in *Wallace v. Kato*, 549 U.S. 384 (2007). *See also Carter v. Porter*, 617 F. Supp. 2d 514, 518 (E.D. Ky. 2008). State law governs the length of the statute, but federal law prescribes when a cause of action accrues. *Wallace*, 549 U.S. at 388.  As outlined in *Wallace*, the limitations period commences for unlawful imprisonment and false arrest claims when a party ceases to be falsely imprisoned and begins confinement pursuant to lawful process—"when, for example, he is bound over by a magistrate or arraigned on charges." *Id*. at 389; *see also Dunn v. Felty*, 226 S.W.3d 68, 72 (Ky. 2007).  Thus, the Broskys' cause of action accrued on November 18, 2010,[2] and the individual capacity claims were not timely asserted.

This situation is not unique, and in *Moore v. City of Harriman*, 272 F.3d 769 (6th Cir. 2001) (en banc), the Sixth Circuit instructed courts about how they should approach this set of facts. *See also Nails v. Riggs*, 195 F. App'x 303, 307-08 (6th Cir. 2006) (relying on *Moore*'s guidance).  The posture of this case is similar to that in *Nails*, which provides a useful template.  The plaintiff in *Nails* filed her complaint against a defendant

---

[2] Charges against Charmarie were dismissed, though the exact day on which that occurred is unclear. [*See* R. 1 at 7.]

6

in his official capacity in June 2002, one day before the limitations period ended. *Id*. at 307. In March 2003, Nails sought to amend her complaint to add individual capacity claims. *Id*. The court looked to Federal Rule of Civil Procedure 15 and the "course of proceedings" test to determine whether relation back would apply. *Id*.

There is no question that the first three requirements under Rule 15(c)(1)(C) are satisfied: the individual capacity claims arose from the same circumstances as the official capacity claims; Farris was timely put on notice; and, Farris will not be prejudiced in his defense. As noted above, service on Farris of the Complaint and the Amended Complaint was at the same time. The final issue to be decided then is whether Farris "knew or should have known that the action would have been brought against [him], but for a mistake concerning [his] identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). The "course of proceedings" test from *Moore*, 272 F.3d at 772-74 (cited by *Nails*, 195 F. App'x at 307-08), guides this analysis. Factors that are to be considered in determining whether Farris was on notice include, "the nature of plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims for qualified immunity." *Id*. at 772 n.1. Of particular importance in the course of proceedings analysis are the guiding principles of fairness to a defendant and resolving any jurisdictional issues early in the litigation. *Id*.

The Court notes that the Broskys' Complaint was exceptionally clear in its intent to sue Farris in his official capacity. That was stated prominently in the header of the case. Additionally, littered throughout the Complaint, Farris was described as acting "under color of state law." [R. 1 at 2, 8, 9.] But the Complaint also sought punitive damages under Count One and as an independent count in Count Five—punitive

damages, of course, being indicative of individual capacity claims.  Most importantly

though, Farris was not prejudiced in the least.  When he was simultaneously served with

the Complaint and Amended Complaint he received notice that he could be individually

liable, and he responded by raising the defense of qualified immunity.  This case fits

comfortably within the rule identified in *Moore* and applied in *Nails*, and accordingly, the

Court rules that the Broskys' Amended Complaint relates back to the filing date of their

Complaint.[3]

## C.

In addition to the statute of limitations defense, Farris seeks dismissal of several

other claims.  First, dismissal is sought for claims under § 1983 and for the state law

claim of unlawful imprisonment.  Farris' motion also argues that the Broskys' intentional

infliction of emotional distress claim should be dismissed, as well as the claim for

punitive damages.

## 1.

The false arrest and unlawful imprisonment claims against Farris in his individual

capacity were not barred by the statute of limitations.  They also will not be dismissed on

substantive grounds.

False arrest is the result of an arrest that is made in spite of the lack of probable

cause. *United States v. Torres-Ramos*, 536 F.3d 542, 554 (6th Cir. 2008).  Probable cause

is determined by "whether, at the time of the arrest, the 'facts and circumstances within

---

[3] The Court is aware of the teachings of *Lovelace v. O'Hara*, 985 F.2d 847, 850-51 (6th Cir. 1993), as cited by Farris.  But it finds that the en banc ruling in *Moore* is the appropriate precedent on which to rely, making special note of Judge Suhrheinrich's dissent in *Moore* in which he identified and analyzed the conflict between *Lovelace*  and *Moore*.  *Moore*, 272 F.3d at 797-99 (Suhrheinrich, J. dissenting).  A majority of the Sixth Circuit did not find that reasoning persuasive, and this Court finds the majority's position to be that which it should follow.

[the arresting officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent person to conclude that an individual either had committed or was committing an offense." *Id*. at 555 (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (first alteration in original)).  However, when considering whether information is trustworthy, an officer "must consider the totality of the circumstances, recognizing both inculpatory *and* exculpatory evidence, before determining if he has probable cause." *Everson v. Leis*, 556 F.3d 484, 489 (6th Cir. 2009) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)).  Otherwise stated, "[a] police officer has probable cause if there is a 'fair probability' that the individual to be arrested has either committed or intends to commit a crime." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (citations omitted).  Probable cause does not require "any showing that [an officer's] belief [is] correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983).  Generally speaking, "the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (citing *Yancey v. Carroll Cty.*, 876 F.2d 1238, 1243 (6th Cir. 1989)).

The Broskys pled facts that when viewed in their favor indicate that at this stage in the litigation this claim has a sufficient factual basis.  Farris' critical witness is described as providing inconsistent statements about the Broskys' involvement in the methamphetamine operation.  The fact that the meth lab was found in an open field near the Broskys' residence could bolster the case in favor of probable cause, but the facts as set forth by Plaintiffs suggest that Farris was unaware of the laboratory's existence upon his arrival.  Thus, that fact does not affect this decision.  Furthermore, qualified immunity

9

is not available at this point.  It was clear in 2009 that arrest without probable cause violated the Constitution.  Whether "it would be clear to a reasonable officer that his conduct was unlawful," *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004), is a more challenging decision.  Yet, when making reasonable inferences in the Plaintiffs' favor, the Court concludes that a reasonable officer would have known that one unreliable tipster's information is not solid enough footing for an arrest.  On this claim, then, the Broskys' are permitted to proceed.

Unlawful imprisonment pursuant to Kentucky law requires that a party be restrained without lawful justification or authority. *See Banks v. Fritsch*, 39 S.W.3d 474, 479 (Ky. App. 2001).  In essence, it mirrors the elements of a § 1983 claim for false arrest, as does the qualified immunity analysis. *See Yanero v. Davis*, 65 S.W. 3d 510, 522-23 (Ky. 2001).  Because the false arrest claim persists, this claim does too.

## 2.

The Broskys' Complaint described facts that could have been utilized in an attempt to make out a claim of withholding exculpatory evidence. [R. 15 at 9-10.]  Farris argued that to the extent that claim was being asserted, it should be dismissed. [R. 15 at 9]  In the Broskys' Response to Farris' Motion, the Broskys state they are not pursuing that claim. [R. 17 at 3].  Rather, Plaintiffs characterize their claims as based on the "illegal, excessive, and unreasonable seizure" without probable cause. [*Id.*][4]  To the extent necessary, Farris' motion will be granted for this claim.

---

[4] In seeking dismissal of all claims, Farris sought dismissal of any claims for pretrial deprivations under the Fifth and the Fourteenth Amendments. [R. 18 at 3.]  To the extent that such claims are being pursued—e.g. for deprivation of one's liberty interest pursuant to the Fourteenth Amendment due to arrest without probable cause, *see Albright v. Oliver*, 510 U.S. 266, 269 (1994)—those claims are dismissed.

Farris also asks the Court to dismiss any malicious prosecution claims because the Complaint does not provide sufficient factual allegations.  Malicious prosecution, "unlike the related cause of action for false arrest or imprisonment, . . . permits damages for confinement imposed pursuant to legal process." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994).  The Court agrees that the *Iqbal*-required pleading standard has not been met with regard to these claims and dismisses them.

Facts must be pled to support that a claim is plausible, not just possible. *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Malicious prosecution consists of four elements:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute.  Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution.  Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure.  Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (internal quotation marks omitted) (internal citations omitted).  A claim by Mr. Brosky fails because he has not claimed that the criminal proceeding was resolved in his favor.  The Court is skeptical that the other elements are satisfied to a plausibility standard, but that analysis can be avoided due to this glaring omission.  Ms. Brosky does not cross the plausibility hurdle because she did not suffer anything more than the initial detention. [R. 1 at 7.]  There was

no prosecution to influence or participate in.  For those reasons, Farris' motion is granted as to these claims.

### 3.

Farris next seeks dismissal of the Broskys' intentional infliction of emotional distress (IIED) claims, founded on state law.  The facts of this case do not support a claim for IIED, so Farris' motion will be granted.

An IIED claim consists of four elements: (1) "plaintiff must show that defendant's conduct was intentional or reckless"; (2) "that the conduct was so outrageous and intolerable as to offend generally accepted standards of morality and decency"; (3) "that a causal connection exists between the conduct complained of and the distress suffered"; (4) "and that the resulting emotional distress was severe." *Lewis v. Laurel Cnty. Sheriff's Dep't*, 2011 WL 3475370, at *8 (E.D. Ky. Aug. 8, 2011) (quoting *Banks v. Fritsch*, 39 S.W.3d 474, 480-81 (Ky. Ct. App. 2001)).  This tort is only cognizable in two instances because Kentucky law has identified it as a "gap-filler."  An IIED claim is available if "a more traditional tort cannot provide redress for the alleged conduct." *Green v. Floyd Cnty.*, 2011 WL 978148, at *2 (E.D. Ky. Mar. 17, 2011).  That is not the case here as unlawful imprisonment permits damages for emotional distress.  *See Banks*, 39 S.W.3d at 479-81.

An IIED claim can also be recognized if "the defendant[] solely intended to cause extreme emotional distress." *Green*, 2011 WL 978148, at *2.  Two problems arise for the Broskys with this argument.  First, no evidence of severe emotional harm was described. Second, Farris' actions in this case were obviously not solely focused on causing emotional harm.  The Broskys' admit as much when they explain that Farris visited their

12

residence as part of an investigation into methamphetamine manufacturing. [R. 1 at 3.] The arrests that followed, and whatever threats may have accompanied them, were at least in part driven by furthering their investigation.  Mixed-motives do not support this second type of IIED claim.

**4.**

Farris also seeks dismissal of Plaintiffs' claims for punitive damages under both state and federal law. [R. 5 at 5-6.]  A punitive damages claim will not be precluded as to federal claims against Defendants in their individual capacities at this early stage of the litigation. *Smith v. Wade*, 461 U.S. 30, 54-56 (1983); *see also Webb v. Jessamine Cnty. Fiscal Ct.*, 2011 WL 3847454 (E.D. Ky. Aug. 26, 2011).  Similarly, it is premature to dismiss Plaintiffs' claim against Farris in his individual capacity based on state law.  KRS § 411.184(2) permits punitive damages, and it is plausible that this case may justify such an award.

**IV.**

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

(1)     Farris' Motion to Dismiss [R. 15] is **GRANTED** with respect to federal claims against Farris in his official capacity;

(2)     Farris' Motion to Dismiss [R. 15] is **GRANTED** with respect to state claims against Farris in his official capacity;

(3)     Farris' Motion to Dismiss [R. 15] is **GRANTED** with respect to § 1983 claims for withholding exculpatory evidence and malicious prosecution;

(4)    Farris' Motion to Dismiss [R. 15] is **DENIED** with respect to § 1983

claim for false arrest;

(5)    Farris' Motion to Dismiss [R. 15] is **DENIED** with respect to the state law

claim of unlawful imprisonment;

(6)    Farris' Motion to Dismiss [R. 15] is **GRANTED** with respect to the state

law claim for intentional infliction of emotional distress;

(7)    Farris' Motion to Dismiss [R. 15] is **DENIED** with respect to federal and

state law claims for punitive damages against him in his individual capacity.

This 28th day of September, 2012.

**Signed By:**

*Gregory F. Van Tatenhove*

**United States District Judge**

14