UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| RICHARD BROSKY, and ) <br> CHARMARIE BROSKY ) <br> ) <br>     Plaintiffs, ) <br> ) <br> V. ) <br> ) <br> ROBERT S. O'NEIL, Special Agent, ) <br> U.S. Forest Service, in his Official and ) <br> Individual Capacities, ) <br> ) <br>     Defendant. ) <br> ) | Civil No: 11-308-GFVT <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on a Motion to Dismiss filed by Defendant Robert O'Neil, Special Agent for the United States Forest Service, in both his official and individual capacities. [R. 15.]  For the reasons stated below, O'Neil's Motion will be GRANTED in part and DENIED in part.

**I**

Plaintiffs' filed their Complaint on November 15, 2011. [R. 1.]  The Complaint contains claims based on violations of the Constitution, brought pursuant to the *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) doctrine, and Kentucky state law.  An Amended Complaint was filed on November 22, 2011.  The only amendment was that O'Neil, in his individual capacity, was named as a defendant. [R. 7.]  Both complaints were served on O'Neil at the same time. [R. 11.]

**A**

Richard and Charmarie Brosky were arrested at their residence on November 16, 2011. [R. 1 at 3.] According to the Complaint, O'Neil, Kelly Farris, and Brian Senters (co-defendants) confronted the Broskys on suspicion that they were manufacturing methamphetamine. [*Id*.] The impetus for Defendants visit was a tip from Hollie Adkins that the Broskys were involved in a conspiracy to manufacture meth. [*Id*.] After the Broskys denied having any knowledge of a manufacturing operation, Sheriff John Pickard arrived at the residence and stated that there was a methamphetamine laboratory above the residence in an open field. [*Id*. at 3-4.] The lab and residence were on the same property, which was owned by the grandmother of either Mr. or Ms. Brosky. [*Id*. at 5.]

Defendants accompanied Mr. Brosky to the meth lab, but Mr. Brosky continued to deny any knowledge of it or of who might be responsible for its presence on the property. [*Id*.] Mr. and Mrs. Brosky were repeatedly asked if the lab was connected with Rusty Collins, an individual also being investigated for crimes related to methamphetamine. [*Id*.] Both Plaintiffs claimed they had no information on Collins with regard to meth. [*Id*.] The Broskys allege that their unwillingness to tie Collins to the meth lab caused their arrest, after which they were taken to Knox County Jail. [*Id*.] Plaintiffs claim that at the time they were taken to jail they were not implicated with Collins' methamphetamine operation by "nearly twenty witnesses or individuals" who were familiar with that operation. [*Id*. at 6.] Only Hollie Adkins claimed the Broskys and Collins were affiliated. [*Id*.] Adkins, meanwhile, is identified by the Broskys as a witness who gave conflicting statements to Defendants about their involvement with Collins,

2

identifying the Broskys in the first interview and not identifying them in the second.[1] [*Id.* at 6-7.]

The impact of Adkins' statements extends beyond the initial arrest as Defendants allegedly misused that information. First, Defendant O'Neil reportedly falsified a report on the investigation of the Broskys by failing to describe Adkins' conflicting statements. [*Id.* at 7.] Next, Defendants are all accused of referring this matter to the United States Attorney's office, and doing so while withholding information about Adkins's statements from the prosecutor. [*Id.*] Finally, the Broskys claim that Defendants concealed the fact that "certain items recovered from the open field above the residence of the Plaintiffs did not identify any controlled substances." [*Id.* at 8.]

**B**

In a motion to dismiss pursuant to Rule 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). While reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *Id*. (citation omitted). Such a motion "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Id.* (quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)).

The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). Moreover, the facts that are pled must rise to the level of plausibility, not just

---

[1] The dates of Adkins's interviews are unclear from the Complaint. [R. 1 at 6-7.]

3

possibility: "facts that are merely consistent with a defendant's liability stops short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## II

Defendant O'Neil contends that claims in both his Official and Individual Capacities should be dismissed. O'Neil is correct as to the official claims and some claims brought against him in his individual capacity, but particular individual claims will remain at this stage in the litigation.

Claims of constitutional violations against a federal official in his Official Capacity are effectively claims against the United States. *Fagan v. Luttrell*, 2000 WL 876775, at *3 (6th Cir. June 22, 2000). Sovereign immunity prevents such claims from being pursued. *Id*. A *Bivens* claim is also based on an accusation that one's constitutional rights have been violated, but it is asserted against a federal employee in his individual capacity. *Harris v. United States*, 422 F.3d 322, 324 (6th Cir. 2005). Federal officials are not immune from these claims, which serve as "counterparts to suits under 42 U.S.C. § 1983." *Vector Research, Inc. v. Howard & Howard Attys. P.C.*, 76 F.3d 692, 698 (6th Cir. 1996) (citing *Butz v. Economou*, 438 U.S. 478, 503-04 (1978)); *see also Tunne v. Paducah Police Dept.*, 2011 WL 1810521, at *4 (W.D. Ky. May 11, 2011) (citing other sources).

With regard to claims against O'Neil in his Individual Capacity, he argues that qualified immunity justifies dismissal of some claims. Other claims should be dismissed because the Broskys have failed to state a claim upon which relief can be granted. O'Neil's motion as to the Broskys' false arrest and unlawful imprisonment claims will be denied. But, any claim of deprivation of due process brought under the Fifth Amendment will be dismissed, as will claims alleging intentional infliction of emotional distress.

False arrest is the result of an arrest that is made in spite of the lack of probable cause. *United States v. Torres-Ramos*, 536 F.3d 542, 554 (6th Cir. 2008). Probable cause is determined by "whether, at the time of the arrest, the 'facts and circumstances within [the arresting officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent person to conclude that an individual either had committed or was committing an offense." *Id*. at 555 (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (first alteration in original)). However, when considering whether information is trustworthy, an officer "must consider the totality of the circumstances, recognizing both inculpatory *and* exculpatory evidence, before determining if he has probable cause." *Everson v. Leis*, 556 F.3d 484, 489 (6th Cir. 2009) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)). Otherwise stated, "[a] police officer has probable cause if there is a 'fair probability' that the individual to be arrested has either committed or intends to commit a crime." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (citations omitted). Probable cause does not require "any showing that [an officer's] belief [is] correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983). Generally speaking, "the existence of probable cause in a [*Bivens*] action presents a jury question, unless there is only one reasonable determination possible."

5

*Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (citing *Yancey v. Carroll Cnty.*, 876 F.2d 1238, 1243 (6th Cir. 1989)).

The Broskys pled facts that if assumed to be true and viewed in their favor indicate that this claim has a sufficient factual basis. O'Neil's critical witness is described as providing inconsistent statements about the Broskys' involvement in the methamphetamine operation. Meanwhile, twenty people tied to the conspiracy had not implicated the Broskys through any type of "credible evidence." [R. 1 at 6.] The fact that the meth lab was found in an open field near the Broskys' residence could bolster the case in favor of probable cause, but the facts as set forth by Plaintiffs suggest that O'Neil was unaware of the laboratory's existence upon his arrival. [R. 1 at 4.]

Qualified immunity is, accordingly, not available at this point. It was clear in 2009 that arrest without probable cause violated the Constitution. *See Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). Whether "it would be clear to a reasonable officer that his conduct was unlawful," *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004), is a more challenging decision. Yet, when reasonable inferences are granted in Plaintiffs' favor, the Court concludes that a reasonable officer would have known that one unreliable tipster's information is not solid enough footing for an arrest, especially when weighed against contrary evidence from others. On this claim, then, the Broskys' are permitted to proceed.[2]

---

[2] O'Neil cites *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002) in support of his contention that "an indictment, fair upon its face, by [a] properly constituted grand jury, conclusively determines the existence of probable cause." [R. 21-1 at 6.] Because the issue in *Higgason* was whether the defendant was *indicted* without probable cause, the Court does not find that case requires dismissal of the Broskys' claims. *Higgason*, 288 F.3d at 877 ("As noted, Plaintiff's . . . allegation comes down to a claim he was indicted without probable cause.").

6

Unlawful imprisonment pursuant to Kentucky law requires that a party be restrained without lawful justification or authority. *See Banks v. Fritsch*, 39 S.W.3d 474, 479 (Ky. App. 2001). In essence, it mirrors the elements of a *Bivens* claim for false arrest. Because the false arrest claim persists, this claim does too.

In contrast, O'Neil's argument that the Broskys lack proper grounds for a Fifth Amendment claim is correct. The Supreme Court explained that allegations of illegal pretrial deprivations of liberty are properly brought as violations of one's Fourth Amendment rights. *Albright v. Oliver*, 510 U.S. 266, 274 (1994). Accordingly, the Broskys' due process claim is dismissed.

O'Neil next seeks dismissal of the Broskys' intentional infliction of emotional distress (IIED) claims, founded on state law. The facts of this case do not support a claim for IIED, so O'Neil's motion will be granted.

An IIED claim consists of four elements: (1) "plaintiff must show that defendant's conduct was intentional or reckless"; (2) "that the conduct was so outrageous and intolerable as to offend generally accepted standards of morality and decency"; (3) "that a causal connection exists between the conduct complained of and the distress suffered"; (4) "and that the resulting emotional distress was severe." *Lewis v. Laurel Cnty. Sheriff's Dep't*, 2011 WL 3475370, at *8 (E.D. Ky. Aug. 8, 2011) (quoting *Banks v. Fritsch*, 39 S.W.3d 474, 480-81 (Ky. Ct. App. 2001)). This tort is only cognizable in two instances because Kentucky law has identified it as a "gap-filler." An IIED claim is available if "a more traditional tort cannot provide redress for the alleged conduct." *Green v. Floyd Cnty.*, 2011 WL 978148, at *2 (E.D. Ky. Mar. 17, 2011). That is not the case here as

7

unlawful imprisonment permits damages for emotional distress. *See Banks*, 39 S.W.3d at 479-81.

An IIED claim can also be recognized if "the defendant[] solely intended to cause extreme emotional distress." *Green*, 2011 WL 978148, at *2. Two problems arise for the Broskys with this argument. First, no evidence of severe emotional harm was described. Second, O'Neil's actions in this case were obviously not solely focused on causing emotional harm. The Broskys' admit as much when they explain that O'Neil visited their residence as part of an investigation into methamphetamine manufacturing. [R. 1 at 3.] The arrests that followed, and whatever threats may have accompanied them, were at least in part driven by furthering their investigation. Mixed-motives do not support this second type of IIED claim.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

(1) O'Neil's Motion to Dismiss [R. 21] is **GRANTED** with respect to claims against him in his official capacity;

(2) O'Neil's Motion to Dismiss [R. 21] is **DENIED** with respect to the *Bivens* claim for false arrest;

(3) O'Neil's Motion to Dismiss [R. 21] is **DENIED** with respect to the state law claim of unlawful imprisonment;

(4) O'Neil's Motion to Dismiss [R. 21] is **GRANTED** with respect to the *Bivens* claim of deprivation of Due Process; and

8

      (5)    O'Neil's Motion to Dismiss [R. 21] is **GRANTED** with respect to the state law claim for intentional infliction of emotional distress.

This 29th day of March, 2013.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge