UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| RICHARD BROSKY, and ) <br> CHARMARIE BROSKY ) <br> ) <br> Plaintiffs, ) <br> ) <br> V. ) <br> ) <br> BRIAN SENTERS, Officer, Barbourville ) <br> Police Department, in his Official and ) <br> Individual Capacities ) <br> ) <br> Defendant. ) <br> ) | Civil No: 11-308-GFVT <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on a Motion for Judgment on the Pleadings filed by Defendant Brian Senters, Officer for the Barbourville Police Department, in both his Official and Individual Capacities. [R. 15.] For the reasons stated below, Senters' Motion will be GRANTED in part and DENIED in part.

**I**

Plaintiffs' filed their Complaint on November 15, 2011. [R. 1.] The Complaint contains claims based on federal law, including 42 U.S.C. § 1983 and Kentucky state law. An Amended Complaint was filed on November 22, 2011. The only amendment was that Senters, in his individual capacity, was named as a defendant. [R. 7.] Both complaints were served on Senters at the same time. [R. 12.]

The allegations giving rise to this Action stem from the arrest of Richard and Charmarie Brosky at their residence on November 16, 2011. [R. 1 at 3.] According to the

Complaint, Senters, Kelly Farris, and Robert O'Neil (co-defendants) confronted the Broskys on suspicion that they were manufacturing methamphetamine. [*Id*.] The impetus for Defendants visit was a tip from Hollie Adkins that the Broskys were involved in a conspiracy to manufacture meth. [*Id*.] After the Broskys denied having any knowledge of a manufacturing operation, Sheriff John Pickard arrived at the residence and stated that there was a methamphetamine laboratory above the residence in an open field. [*Id*. at 3-4.] The lab and residence were on the same property, which was owned by the grandmother of either Mr. or Ms. Brosky. [*Id*. at 5.]

Defendants accompanied Mr. Brosky to the meth lab, but Mr. Brosky continued to deny any knowledge of it or who might be responsible for its presence on the property. [*Id*.] Mr. and Mrs. Brosky were repeatedly asked if the lab was connected with Rusty Collins, an individual also being investigated for crimes related to methamphetamine. [*Id*.] Both Plaintiffs claimed they had no information on Collins' with regard to meth. [*Id*.] The Broskys allege that their unwillingness to tie Collins to the meth lab caused their arrest, after which they were taken to Knox County Jail. [*Id*.] Plaintiffs claim that at the time they were taken to jail they were not implicated with Collins' methamphetamine operation by "nearly twenty witnesses or individuals" who were familiar with that operation. [*Id*. at 6.] Only Hollie Adkins claimed the Broskys and Collins were affiliated, and Adkins was identified by the Broskys as a witness who gave conflicting statements to Defendants about their involvement with Collins. [*Id*. at 6-7.] She identified the Broskys in the first interview and did not in the second.[1]

The impact of Adkins' statements extends beyond the initial arrest as Defendants allegedly misused that information. First, Defendant O'Neil reportedly falsified a report

---

[1] The dates of Adkins's interviews are unclear from the Complaint. [R. 1 at 6-7.]

on the investigation of the Broskys by failing to describe Adkins's conflicting statements. [*Id.* at 7.] Next, Defendants are all accused of referring this matter to the United States Attorney's office, and doing so while withholding information about Adkins's statements from the prosecutor. [*Id.*] Finally, the Broskys claim that Defendants concealed the fact that "certain items recovered from the open field above the residence of the Plaintiffs did not identify any controlled substances." [*Id.* at 8.]

**B**

Senters seeks Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c). This rule provides, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P.12(c). "The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Fritz v. Charter Twp. of Comstock*, 592 F. 3d 718, 722 (6th Cir. 2010) (citing *Zeigler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citations omitted).

As is the case with a motion to dismiss under Rule 12(b)(6), in a Rule 12(c) motion for judgment on the pleadings, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or

3

unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).

## II

Defendant Senters contends that claims in both his official and individual capacities should be dismissed. Qualified immunity, failure to state a claim for which relief can be granted, and failing to comply with the relevant statutes of limitation support Senters' argument. [R. 24 at 1.]

### A

Any claims brought against Senters in his official capacity are functionally equivalent to claims against the City of Barbourville: "individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). This is because a plaintiff seeking to "recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id.* Thus, Barbourville is the true defendant. But because Barbourville cannot be liable under federal law on a *respondeat superior* theory of liability, the claims asserted against Senters in his official capacity are dismissed. *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005).

4

**B**

**1**

With regard to claims against Senters in his Individual Capacity, he argues that the Broskys' Amended Complaint is untimely, and the claims in it should therefore be dismissed. He also contends that qualified immunity justifies dismissal of the Broskys' claims. The Broskys' false arrest and unlawful imprisonment claims will be permitted to proceed as neither the statute of limitations nor qualified immunity mandates Senters' desired outcome. However, Senters motion will be granted for the claim over withholding exculpatory evidence.

Senters' statute of limitations argument is that the Broskys' Complaint, filed on November 15, 2011, clearly sought recovery against him only in his official capacity. The Broskys' Amended Complaint was filed on November 22, 2011, and it evinced an intent to pursue claims against Senters in his individual capacity. The statute of limitations problem arises because the limitations period for both causes of action is one year, and the Broskys' were arrested on November 16, 2010 and arraigned on November 18, 2010. If Senters is right, this action only consists of official capacity claims. Although the Court concurs with Senters' calculations, an exception to the general prohibition on asserting claims after the limitations period has passed is implicated and allows for the Broskys' individual capacity claims to enjoy relation back.

The statute of limitations for false arrest and unlawful imprisonment is one year. Kentucky law provides that personal-injury torts have a one-year statute of limitations, and § 1983 claims are subject to that same limitation, as outlined in *Wallace v. Kato*, 549 U.S. 384 (2007). *See also Carter v. Porter*, 617 F. Supp. 2d 514, 518 (E.D. Ky. 2008).

5

State law governs the length of the statute, but federal law prescribes when a cause of action accrues. *Wallace*, 549 U.S. at 388. As outlined in *Wallace*, the limitations period commences for unlawful imprisonment and false arrest claims when a party ceases to be falsely imprisoned and begins confinement pursuant to lawful process—"when, for example, he is bound over by a magistrate or arraigned on charges." *Id*. at 389; *see also Dunn v. Felty*, 226 S.W.3d 68, 72 (Ky. 2007). Thus, the Broskys' cause of action accrued on November 18, 2010,[2] and the individual capacity claims were not timely asserted.

This situation is not unique, and in *Moore v. City of Harriman*, 272 F.3d 769 (6th Cir. 2001) (en banc), the Sixth Circuit instructed courts about how they should approach this set of facts. *See also Nails v. Riggs*, 195 F. App'x 303, 307-08 (6th Cir. 2006) (relying on *Moore*'s guidance). The posture of this case is similar to that in *Nails*. The plaintiff in *Nails* filed her complaint against a defendant in his official capacity in June 2002, one day before the limitations period ended. *Id*. at 307. In March 2003, Nails sought to amend her complaint to add individual capacity claims. *Id*. The court looked to Federal Rule of Civil Procedure 15 and the "course of proceedings" test to determine whether relation back would apply. *Id*.

There is no question that the first three requirements under Rule 15(c)(1)(C) are satisfied: the individual capacity claims arose from the same circumstances as the official capacity claims; Senters was timely put on notice; and, Senters will not be prejudiced in his defense. As noted above, service on Senters of the Complaint and the Amended Complaint was at the same time. The final issue to be decided then is whether Senters

---

[2] Charges against Charmarie were dismissed, though the exact day on which that occurred is unclear. [*See* R. 1 at 7.]

6

"knew or should have known that the action would have been brought against [him], but for a mistake concerning [his] identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). The "course of proceedings" test from *Moore*, 272 F.3d at 772-74 (cited by *Nails*, 195 F. App'x at 307-08), guides this analysis. Factors that are to be considered in determining whether Senters was on notice include, "the nature of plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims for qualified immunity." *Id*. at 772 n.1. Of particular importance in the course of proceedings analysis are the guiding principles of fairness to a defendant and resolving any jurisdictional issues early in the litigation. *Id*.

The Court notes that the Broskys' Complaint was exceptionally clear in its intent to sue Senters in his official capacity. That was stated prominently in the header of the case. Additionally, littered throughout the Complaint, Senters was described as acting "under color of state law." [R. 1 at 2, 8, 9.] But the Complaint also sought punitive damages under Count One and as an independent count in Count Five—punitive damages, of course, being indicative of individual capacity claims. Most importantly though, Senters was not prejudiced in the least. When he was simultaneously served with the Complaint and Amended Complaint he received notice that he could be individually liable, and he responded by raising the defense of qualified immunity. This case fits comfortably within the rule identified in *Moore* and applied in *Nails*, and accordingly, the Court rules that the Broskys' Amended Complaint relates back to the filing date of their Complaint.[3]

---

[3] The Court is aware of the teachings of *Lovelace v. O'Hara*, 985 F.2d 847, 850-51 (6th Cir. 1993), as cited by Senters. But it finds that the en banc ruling in *Moore* is the appropriate precedent on which to rely, making special note of Judge Suhrheinrich's dissent in *Moore* in which he identified and analyzed the conflict between *Lovelace* and *Moore*. *Moore*, 272 F.3d at 797-99 (Suhrheinrich, J. dissenting). A

**2**

The false arrest and unlawful imprisonment claims against Senters in his individual capacity were not barred by the statute of limitations. They also will not be dismissed on substantive grounds.

False arrest is the result of an arrest that is made in spite of the lack of probable cause. *United States v. Torres-Ramos*, 536 F.3d 542, 554 (6th Cir. 2008). Probable cause is determined by "whether, at the time of the arrest, the 'facts and circumstances within [the arresting officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent person to conclude that an individual either had committed or was committing an offense." *Id*. at 555 (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (first alteration in original)). However, when considering whether information is trustworthy, an officer "must consider the totality of the circumstances, recognizing both inculpatory *and* exculpatory evidence, before determining if he has probable cause." *Everson v. Leis*, 556 F.3d 484, 489 (6th Cir. 2009) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)). Otherwise stated, "[a] police officer has probable cause if there is a 'fair probability' that the individual to be arrested has either committed or intends to commit a crime." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (citations omitted). Probable cause does not require "any showing that [an officer's] belief [is] correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983). Generally speaking, "the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible."

---

majority of the Sixth Circuit did not find that reasoning persuasive, and this Court finds the majority's position to be that which it should follow.

*Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (citing *Yancey v. Carroll Cty.*, 876 F.2d 1238, 1243 (6th Cir. 1989)).

The Broskys pled facts if assumed to be true when viewed in their favor indicate that at this stage in the litigation this claim has a sufficient factual basis. The critical inculpatory witness is described as providing inconsistent statements about the Broskys' involvement in the methamphetamine operation. Meanwhile, twenty people tied to the conspiracy had not implicated the Broskys through any type of "credible evidence." [R. 1 at 6.] The fact that the meth lab was found in an open field near the Broskys' residence could bolster the case in favor of probable cause, but the facts as set forth by Plaintiffs suggest that Senters was unaware of the laboratory's existence upon his arrival. Furthermore, the Broskys disclaimed knowledge of the manufacturing equipment.

Consequently, qualified immunity is not available at this time. It was clear in 2009 that arrest without probable cause violated the Constitution. Whether "it would be clear to a reasonable officer that his conduct was unlawful," *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004), is a more challenging decision. Yet, when making reasonable inferences in the Plaintiffs' favor, the Court concludes that a reasonable officer would have known that one unreliable tipster's information is not solid enough footing for an arrest, especially when weighed against contrary evidence from many others. On this claim, then, the Broskys' are permitted to proceed.

Unlawful imprisonment pursuant to Kentucky law requires that a party be restrained without lawful justification or authority. *See Banks v. Fritsch*, 39 S.W.3d 474, 479 (Ky. App. 2001). In essence, it mirrors the elements of a § 1983 claim for false

9

arrest, as does the qualified immunity analysis. *See Yanero v. Davis*, 65 S.W. 3d 510, 522-23 (Ky. 2001). Because the false arrest claim persists, this claim does too.

The Broskys' Complaint described facts that could have been utilized in an attempt to make out a claim of withholding exculpatory evidence. [R. 15 at 9-10.] Senters argued that to the extent that claim was being asserted, it should be dismissed. [R. 24-1 at 27.] In the Broskys' Response to a co-defendant's motion to dismiss, they stated they were not pursuing that claim. [R. 17 at 3]. Rather, Plaintiffs characterize their claims as based on the "illegal, excessive, and unreasonable seizure" without probable cause. [*Id.*] To the extent necessary, Senters' motion will be granted for this claim.

### IV

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

(1) Senters' Motion to Dismiss [R. 24] is **GRANTED** with respect to claims against Senters in his Official Capacity;

(#) Senters' Motion to Dismiss [R. 24] is **DENIED** with respect to § 1983 claim for false arrest;

(#) Senters' Motion to Dismiss [R. 24] is **DENIED** with respect to the state law claim of unlawful imprisonment; and

(#) Senters' Motion to Dismiss [R. 24] is **GRANTED** with respect to a claim of withholding exculpatory evidence.

This 29th day of March, 2013.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge